JUDGE COPER
delivered the opinion of the court
The appellant brought this suit in equity, alleging that he was the owner and in the possession of a certain tract of land which was described in the petition, and that the defendant, appellee, was the owner and in the possession of an adjoining tract; that recently the defendant had been making repeated encroachments upon the land of the plaintiff, and was endeavoring to compress and render his boundary uncertain, and had entered upon his land and committed divers trespasses, and had engaged in mining from a valuable vein of coal in said land, and was giving it out in speeches that said coal-mine was upon his (the defendant’s) land, and was slandering the plaintiff’s title, and upon these facts alone sought the judgment of the chancellor establishing the line between them, and enjoining the defendant from setting up claim or title to said *471 coal-mine within the plaintiff’s boundary, and quieting the plaintiff’s title.
The defendant answered, putting in issue the allegation that the coal he was mining was on the plaintiff’s land, and admitting that he claimed title to a designated line which included the coal within his boundary, and that he had entered upon the land to the extent of the boundary claimed by himself, and averring that to that extent he was the owner of the land.
No motion was made to transfer the cause to the ordinary docket; and the chancellor having adjudged in favor of the defendant, and established the line as claimed by him, the plaintiff has appealed.
The evidence as to the true location of the line in dispute is quite conflicting, and after carefully considering it we are of the opinion that if the case had been submitted to a jury under proper instructions we could not have disturbed a verdict for either party, though we incline to the opinion that the evidence preponderates in favor of the appellant.
We have recently decided that when a purely legal action is brought and prosecuted in equity without objection, that 'upon an appeal from the judgment of the chancellor we will give to his finding, on the facts, the same weight we would have given to the finding of a jury correctly instructed. (Pittsburgh, Cincinnati & Saint Louis Railroad Co. v. Woolley, 12 Bush, 451.)
The question then arises, whether this case is one of the class above referred to, and the decision must depend upon the determination of that question.
It is clear that an action for the trespasses alleged to have been committed was properly cognizable only in a court of law. But no recovery was sought for the trespasses, the only relief asked being a judgment settling the line between the parties and quieting the appellant’s title and possession.
*472 The chancellor had no jurisdiction originally of simple questions of boundary. He had jurisdiction where there was confusion of boundaries, but such jurisdiction did not extend to every dispute as to boundary. In such cases the law generally affords ample remedy; and hence it has been held that unless some peculiar equity intervenes of which a court of law can take no notice, courts of equity have no jurisdiction. (1 Story’s Equity, sec. 616.)
In other words, there must be some equitable ground attaching itself to the controversy, such as fraud on the part of the defendant, by which a confusion of boundary has been produced, or there must be some relation between the parties which makes it the duty of one of them to preserve and protect the boundary, or it must be necessary in order to prevent a multitude of suits, or to prevent mischief otherwise irremediable, or the like. (Ib., secs. 620, 621, 622.)
There is in this case no charge of fraud, no relation between the parties which made it the duty of the appellee to preserve the «boundary; there was no necessity for the intervention of the chancellor to prevent a multiplicity of suits or irremediable mischief. The case presented was only the ordinary one of a dispute between independent proprietors of adjoining lands claimed and held by the respective owners adversely to each other. The dispute might have been settled by a single suit at law, and so far as boundary was concerned presented no ground whatever for the intervention of the chancellor.
The only remaining ground then is the prayer of the appellant to have his title quieted. But he stated no facts showing a right to maintain a bill quia timet or a bill of peace.
In order to maintain a bill quia timet the party complaining must show, not an injury already done, but one which he apprehends may happen in the future; and to sustain the latter *473 in a case like this, he must first have established his right at law. (2 Story, 826 and 859.)
Nor did the appellant show a right to come into equity under the statute to quiet his title. There was in fact no dispute as to title; each admitted the title of the other within his boundary; and the only thing to be done was to ascertain the true location of a single line, which could have been done by an action at law; and to hold that the appellant had a right, on the facts stated by him, to have his title quieted would be to set a precedent under which all controversies about boundary might be brought into courts of chancery, and to put an end to the long and well-established rule that actions of trespass, quare clausum fregit, are only cognizable at law.
The Code of Practice does not obliterate these well-established distinctions between courts of law and courts of equity. The only change made is, that if an action be brought in the wrong court it shall not on that account be dismissed, but may be transferred, and if not transferred, may be tried and decided as if properly brought; i. e., as if brought in the proper court.
The plaintiff may prosecute his suit by equitable proceedings in all cases where courts of chancery, before the adoption of the Code, had jurisdiction, and must so proceed in all cases where such jurisdiction was exclusive, and in all other cases must prosecute his action by ordinary proceedings. (Civil Code, secs. 4, 5.)
Before the adoption of the Code the court of chancery would have had no jurisdiction of this case, and if brought there, must' have been dismissed for w'ant of jurisdiction. It should therefore have been brought at law, and the only effect of* the Code was to retain it in court to be decided as an ordinary action; and having been an ordinary action in every thing except in name, it must be treated here as if it had the name also, with the single exception that we will treat the evi *474 dence copied and certified by the clerk as a part of the record without a bill of exceptions.
A contrary practice would devolve upon this court the tedious labor of analyzing the evidence in order to be able to decide doubtful questions of fact upon the mere preponderance of the evidence in cases in which the constitution and laws have designated another tribunal to try questions of fact, and would tend to obliterate the distinction between courts of law and courts of equity, which the law-making power has wisely intended to preserve; and it would also tend to discourage trials by jury, and thereby to weaken and impair that system which is one of the surest guarantees of the rights of the citizen and one of the conservative safeguards in the administration of public justice.
We must therefore treat the finding of the circuit judge on the facts just as we would have treated the same finding by a jury.
Wherefore the judgment is affirmed.